## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JANE DOE (K.R.A.) an individual, | |
| Plaintiff | |
| v. | CIVIL ACTION NO. 2:24-cv-4316 |
| RED ROOF INNS, INC.; RRF HOLDING COMPANY, LLC; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT LLC; and SUNSTAR ORANGEPARK, INC. | |
| Defendants. | JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

Jane Doe (K.R.A.), Plaintiff in the above-styled and numbered cause, files this Original Complaint against Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, RRI West Management LLC, and SUNSTAR ORANGEPARK, INC., as Defendants, and would respectfully show the Court and jury as follows:

### SUMMARY

1.      Jane Doe (K.R.A.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.      Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a

1

commercial sex act through force, fraud, or coercion.[1] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel victims to engage in commercial sex acts against their will.

3.    Some victims are brought into trafficking through abduction or use of physical violence, while many other trafficking relationships begin with a false promise of a romantic relationship or financial security.[2] Traffickers often prey on individuals with vulnerabilities that make them more susceptible to coercion and control.[3]

4.    Traffickers then use a variety of techniques to maintain control over their victims. Some traffickers use physical violence and overt threats to control their victims, while others use more subtle forms of fraud and coercion.[4] Many traffickers use techniques to undermine victims' ability to think and act independently through repetitive infliction of psychological trauma. These techniques can include high levels of control, exposure to chronic stress and threat, isolation, provocation of fear, and the creation of a sense of helplessness in victims.[5]

5.    Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for traffickers and sex buyers.

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.
[2] The National Prevention Toolkit, Sex Trafficking, https://nationaltoolkit.csw.fsu.edu/leo/part-2/sex-trafficking
[3] Polaris Project, Sex Trafficking: The Basics, https://polarisproject.org/understanding-human-trafficking/
[4] The National Prevention Toolkit, Sex Trafficking, https://nationaltoolkit.csw.fsu.edu/leo/part-2/sex-trafficking
[5] Elizabeth Hopper, Ph.D. & José Hidalgo, M.D., *Invisible Chains: Psychological Coercion of Human Trafficking Victims*, 1 Intercultural Hum. Rts. L. Rev. 185, 191 (2006).

6. Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

7. In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

8. Jane Doe (K.R.A.) alleges that Defendants derived financial benefit from facilitating sex trafficking by providing a venue where traffickers could exploit victims, including Jane Doe (K.R.A.), with minimal risk of detection or interruption. Jane Doe (K.R.A.) further alleges that Defendants continued providing support for traffickers, including her own trafficker, despite obvious and apparent signs of sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

9. Defendants had the knowledge and opportunity to prevent the severe and permanent harm that Jane Doe (K.R.A.) experienced as the result of continuous sexual exploitation. Defendants failed to do so. Instead, Defendants benefited from facilitating that sex trafficking. Accordingly, Jane Doe (K.R.A.) files this lawsuit.

## **PARTIES**

10. Plaintiff, Jane Doe (K.R.A.) is a resident of Florida. She may be contacted through her lead counsel, whose information is contained below.

11.     Jane Doe (K.R.A.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of being caused, through force, fraud or coercion, to commit a commercial sex act.

12.     Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (K.R.A.)

13.     Defendant Red Roof Inns, Inc. d/b/a Red Roof Inn ("RRI Inc.") is a Delaware corporation with its principal place of business in Ohio. It can be served by its registered agent Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221.

14.     RRF Holding Company, LLC, ("RRF Holding") is a Delaware corporation with its principal place of business in Ohio. It can be served by its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221. RRF Holding is a direct subsidiary of RRI Inc.

15.     Red Roof Franchising, LLC (RRF) is a Delaware limited liability company with its corporate headquarters and principal place of business at 7815 Walton Pkwy, New Albany, Ohio 43054.  RRF maintains a registered agent in Ohio, and it can be served through its registered agent, Corporation Service Company, at 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

16.     Defendant RRI West Management, LLC d/b/a Red Roof Inn ("RRI West Management") is a Delaware Limited Liability Company. It can be served by its registered agent Capitol Corporate Services, Inc., 4568 Mayfield Rd, Ste 204, Cleveland, OH 44121. RRI West Management shares a common parent company with RRI Inc. RRI West Management is an affiliate of RRI Inc. and RRI Franchising.

17.     RRI Inc., RRF Holding, RRI Franchising, LLC and RRI West Management are referred to collectively as the "RRI Brand Defendants." At all relevant times, the RRI Brand Defendants were the franchisor for the Red Roof Inn hotel located at 415 Stanton Christina Rd, Newark, DE 19713.

18.     Defendant SUNSTAR ORANGEPARK, INC., is a for profit corporation with is principal place of business in Florida. It may be served through its registered agent, Patel K. Bharat, 1180 Tinkers Cove Lane, Jacksonville, FL 32211, or wherever he may be found. SUNSTAR ORANGEPARK, INC., will be referred to as a "Franchisee Defendant" or "Franchisee". At all relevant times, Defendant Sunstar Orangepark, Inc., owned, operated, controlled, and managed the Red Roof Inn hotel located at 6099 Youngerman Circle, Jacksonville, FL 32244.

19.     All references Sunstar Orangepark, Inc., include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Sunstar Orangepark, Inc., now or at any time relevant to the claims herein.

## **JURISDICTION AND VENUE**

20.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendants resides in this district.

22.     Each of the RRI Defendants participated in a joint venture operating the subject hotel from a central location at the RRI corporate offices in New Albany, Ohio, within this district. On information and belief:

    a.  The relationship between the RRI Defendants was centered at the RRI corporate offices in the Southern District of Ohio.

    b.  The RRI Defendants signed agreements with one another related to the subject hotel(s) from RRI corporate offices in the Southern District of Ohio.

    c.  The RRI Defendant exercised joint control over operations of the subject hotels from a central location at RRI corporate offices in the Southern District of Ohio.

    d.  The RRI Defendants distributed revenue earned from the subject hotels among themselves from RRI corporate offices in the Southern District of Ohio.

    e.  The RRI Defendants developed policies for the subject hotels from RRI corporate offices in the Southern District of Ohio.

    f.  The RRI Defendants communicated with one another regarding operation of the subject hotels from RRI corporate offices in the Southern District of Ohio.

23.     Plaintiff's claims against Franchisee arise out of Franchisee's contacts with Ohio through Franchisee's relationship with the RRI Brand Defendants, which have their principal place of business in the Southern District of Ohio. Franchisee's participation in a venture with the RRI Brand Defendants operating the subject motel occurred, in substantial part, in Ohio because:

    a.  Upon information and belief, Franchisee actively sought out a franchising relationship by contacting the RRI Defendants in Ohio.

    b.  Franchisee acknowledged that the execution and acceptance of the franchising agreement occurred in the Southern District of Ohio.

    c.  The franchising agreement had a choice of law provision selecting the law of Ohio as the governing law.

    d.  The franchising agreement required Franchisee to irrevocably submit itself to the jurisdiction of Ohio courts and waived all objections to personal jurisdiction and service of process.

    e.   The franchising agreement required Franchisee to report information to the RRI Defendants in Ohio, including information about all incidents involving safety, security, public relations, or serious injury to persons or property that occur at, or involve, the subject motel, including those involving sex trafficking victims.

    f.   Franchisee agreed to submit all notices required under the franchising agreement to the RRI Brand Defendants in the Southern District of Ohio.

    g.   Franchisee was required to attend training and meetings in Ohio.

    h.   The RRI Brand Defendants dictated policies related to safety, security, human trafficking, employee training and response as well as other subjects from their principal place of business in the Southern District of Ohio.

    i.   Franchisee Defendant had an ongoing obligation to participate in centralized programs operated by the RRI Brand Defendants from their principal place of business in the Southern District of Ohio.

    j.   Upon information and belief, reservation information for rooms at the subject motel passed through a system operated and managed by the RRI Brand Defendants from their principal place of business in Ohio.

    k.   Upon information and belief, payment information for rooms at the subject motel passed through a system operated and managed by the RRI Brand Defendants in Ohio.

    l.   The benefit that Franchisee received from room rentals was governed by the Ohio franchising agreement.

    m.   Franchisee agreed to make all payments due under the franchising agreement at the RRI principal place of business in the Southern District of Ohio.

    n.   Franchisee's operation of the subject RRI was controlled and/or influenced by many policies set and enforced by the RRI Brand Defendants from their principal place of business in Ohio. Including those policies specifically related to prostitution, commercial sex, human and sex trafficking.

24.   The Franchisee Defendant was a RRI corporate affiliate who participated in a joint venture with the RRI Brand Defendants centered in the Southern District of Ohio as

described above, **and** parties to franchising agreements and management agreements with the RRI Brand Defendants, thereby operating the Franchisee Defendant's RRI in substantial part, in Ohio, as described above.

25.     Upon information and belief, Defendant Franchisee Defendant contractually consented to jurisdiction in the Southern District of Ohio.

## STATEMENT OF FACTS

**I.    Jane Doe (K.R.A.) is a Survivor of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendants.**

26.     Jane Doe (K.R.A.) met a man who gave her drugs and  orced her to engage in commercial sex acts numerous times through the use of physically violence. Jane Doe (K.R.A.) feared for her life. Jane Doe (K.R.A.)'s trafficker kept all the money for his own financial benefit. Jane doe (K.R.D.) was terrified of her trafficker and what he might do to her if she tried to escape.

27.     At various times between January 2013 through December 2014, Jane Doe (K.R.A.) was continuously and unlawfully trafficked at the Red Roof Inn located at 6099 Youngerman Circle, Jacksonville, FL 32244 ("Subject Red Roof Inn"). Jane Doe (K.R.A.) was trafficked through force, fraud and coercion by her trafficker and required to engage in numerous commercial sex acts for his financial benefit.

28.     Jane Doe (K.R.A.)'s sexual exploitation repeatedly occurred in rooms of the Subject Red Roof Inn and was facilitated by the RRI Brand Defendants and Franchisee Defendant.

29.     Between January 2013 through December 2014, Jane Doe (K.R.A.) was trafficked an incalculable number of times at the Subject Red Roof Inn.

8

30. There were obvious signs that Jane Doe (K.R.A.) was being trafficked at the Subject Red Roof Inn such that the RRI Brand Defendants and Franchisee Defendant knew or, through the exercise of reasonable diligence should have known, that they were participating in a venture causing her sexual exploitation.

31. Some of the obvious signs of Jane Doe (K.R.A.)'s trafficking at the Subject Red Roof Inn included the fact that hotel rooms would be paid for in cash or prepaid card, she would not leave the room, she had few or no personal items, the do not disturb sign was constantly on the door to the room being used, housekeeping was constantly refused, there were several complaints made against Jane Doe (K.R.A.) and the rooms she occupied, and there was constant heavy foot traffic in and out of her room involving men who were not hotel guests. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time.

32. During Jane Doe (K.R.A.)'s trafficking period, there were two types of RRI properties: corporate properties operated by corporate affiliates and franchised property owned by third-party franchisees and operated in conjunction with RRI affiliates and as agents of RRI affiliates.

33. At all relevant times, the Subject Red Roof Inn was a hotel branded by the RRI Brand Defendants.

34. At relevant times, Franchisee Defendant owned, operated, and managed the subject Red Roof Inn and employed the staff at the Red Roof Inn through the franchising system of the RRI Brand Defendants.

35. At all relevant times, the RRI Brand Defendants were directly involved in the relevant operations of the Red Roof Inn and exercised systemic control over Franchisee Defendant

with respect to operation of the Red Roof Inn such that Franchisee Defendant were the RRI Brand Defendants' actual agents for operation of the Red Roof Inn. The RRI Brand Defendants also retained control over aspects of the operations of the Red Roof Inn directly related to the claims of Jane Doe (K.R.A.)

36.     The trafficker of Jane Doe (K.R.A.) and other sex traffickers frequently used Red Roof Inn branded hotels for sex trafficking with approval, acquiescence, and/or implicit support of Defendants and their employees and agents, including the staff of the Subject Red Roof Inn.

## II.     The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.

37.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what Defendants knew or should have known regarding the trafficking at their hotel properties, the specific trafficking activity that resulted in the trafficking of Jane Doe (K.R.A.) was pervasive and apparent at the Subject Red Roof Inn.

38.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[6] This is no accident. For years, sex traffickers have been able to reap enormous profits with "little risk when attempting to operate within hotels."[7] In 2014, 92 percent of calls to

---

[6] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*
[7] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[8] Hotels have been found to account for over 90 percent of commercial exploitation of children.[9]

39. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.[10]

40. Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[11]

41. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

---

[8] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[9] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

[10] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[11] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b. Individuals show signs of physical abuse, restraint, and/or confinement;

c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e. Individuals lack freedom of movement or are constantly monitored;

f. Individuals avoid eye contact and interaction with others;

g. Individuals have no control over or possession of money or ID;

h. Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i. Individuals have few or no personal items—such as no luggage or other bags;

j. Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k. A group of girls appears to be traveling with an older female or male;

l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

n. Possession of bulk sexual paraphernalia such as condoms or lubricant;

o. Possession or use of multiple cell phones; and

p. Possession or use of large amounts of cash or pre-paid cards.[12]

42. The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex

---

[12] *Id.*

trafficking.[13] From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

43. The RRI Brand Defendants knew commonly occurring signs of illegal activity associated with sex trafficking. For example, no later than 2010 RRI advised hotel management that staff should constantly be on the lookout for unusual or irregular activity on the property, including multiple guests arriving/leaving a guestroom for short durations of time or a pimp or partner who sits in the lobby or a vehicle while online setting up prostitution appointments for a property. The policy also identified signs that housekeeping staff should look for when entering guest rooms, which were consistent with the recognized "red flags" of trafficking in the hotel industry.

44. The RRI Brand Defendants knew and communicated to franchisees and hotel management that trafficking was often associated with other criminal activity, including illegal drugs and assaults.

45. The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[14] It is also well understood, and specifically trained in hotel safety training courses, that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

---

[13] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[14] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

46.     The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[15]

47.     Red Roof Inn believed that pimps should be treated as synonymous with traffickers and understood that the presence of pimps at a hotel property was an indication of sex trafficking at the property.

48.     All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

49.     The most effective weapon against sexual exploitation and human trafficking is education and training.[16]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[17]

50.     This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing

---

[15] *Id.*

[16] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[17] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

to report it – than those who have not been trained.[18]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

51.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

52.    Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

53.    Unfortunately for Jane Doe (K.R.A.), the promises made by the RRI Brand Defendants and Franchisee Defendant have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (K.R.A.)

### III.    Sex Trafficking Has Long Been Prevalent at RRI Branded Properties, and Defendants Have Known About It.

54.    Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (K.R.A.)'s trafficking, that sex trafficking was ongoing and widespread at RRI branded properties including the subject properties.

---

[18] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

55.     Use of RRI branded properties for sex trafficking is well known to the Defendants. RRI hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[19]

### a. Sex Trafficking at RRI Branded Hotels was well Known by Defendants

56.     Upon information and belief, each of the Defendants monitored criminal activity occurring at its branded hotels and was aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the Subject Red Roof Inn.

57.     Countless tales of tragedy, which upon information and belief Red Roof Inn knows about, establish the entrenched and pervasive nature of Red Roof's role in providing a venue where sex trafficking has continued, unabated, for years. For example, reviews of its branded properties, which upon information and belief Red Roof monitors regularly, also show the pervasiveness of sex trafficking at its branded properties and Red Roof Inn's knowledge of the same.

58.      Information that has become public through news stories establishes the entrenched and pervasive nature of RRI's role in providing a venue where sex trafficking has continued unabated for years. Among notable press involving the frequent use of RRI branded hotels for illegal activity, the following was noted:

> a.  In 2010, a man and woman appeared in court on charges of trafficking a 14-year-old Milwaukee girl at a Red Roof Inn in Oak Creek, Wisconsin. At the Red Roof Inn, the traffickers gave the girl marijuana to smoke and then took pictures of her naked, which were put on a local website.[20]

---

[19] https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Federal-Human-Trafficking-Report-Low-Res.pdf; https://traffickinginstitute.org/wp-content/uploads/2022/01/2020-Federal-Human-Trafficking-Report-Low-Res.pdf

[20] John Diedrich, *2 face federal sex-trafficking charges*, Milwaukee Journal Sentinel (June 16, 2010), https://archive.jsonline.com/news/crime/96508359.html/

b. In 2010, 2 were charged with transporting a minor to engage in prostitution after a 17-year-old California runaway was trafficked at Red Roof Inn locations in New York and Maryland.[21]

c. In 2012, a Pennsylvania man was indicted by a federal grand jury on charges of sex trafficking involving a 16-year-old girl who was trafficked at a New Jersey Red Roof Inn in May 2012.[22] In 2014 he was sentenced to 10 years in federal prison.[23]

d. In 2012, A Minneapolis police officer investigating juvenile sex trafficking activity spotted an ad on the website Backpage.com that depicted the image of a provocatively dressed young woman offering "unrushed service, full of pleasure." The officer called the number on the ad and spoke with a female who said she was at the Red Roof Inn in Woodbury.[24]

e. In 2012, a Rochester man and woman were charged in a sex trafficking case of a minor. Investigators determined that two customers paid to have sex with the victim and the woman arrested at the Red Roof Inn.[25]

f. In 2012, two teenage girls were human trafficking victims at a RRI in Charlotte, North Carolina. In subsequent interviews with other human trafficking victims, they alleged their pimps would pay RRI managers and maids to not report illegal activities.[26] RRI eventually pulled its brand from the hotel.[27]

g. In 2013, a 50-year-old man was charged with prostitution and human trafficking, for forcing a woman to perform sex acts against her will at the Red Roof Inn on Eisenhower Boulevard in Pennsylvania.[28]

---

[21] https://www.washingtonexaminer.com/teen-prostituted-held-against-her-will-in-md-and-va-hotels-feds-say

[22] Press Release, The Federal Bureau of Investigation, Pennsylvania Man Charged with Sex Trafficking of a Minor (June 27, 2012), https://archives.fbi.gov/archives/newark/press-releases/2012/pennsylvania-man-charged-with-sex-trafficking-of-a-minor

[23] Michaelangelo Conte, *Man charged with sex trafficking a teen he met in Secaucus takes plea*, nj.com (Mar. 28, 2014), https://www.nj.com/hudson/2014/03/man_originally_charged_with_sex_trafficking_a_16-year-old_he_met_in_secaucus_takes_a_plea.html.

[24] Mike Longaecker, *Police: Sex trafficking victim turns up at Woodbury hotel*, Republican Eagle (August 17, 2012), https://www.republicaneagle.com/news/public_safety/police-sex-trafficking-victim-turns-up-at-woodbury-hotel/article_88eac778-73b4-50cb-ac65-182279d50948.html

[25] Department of Justice, *ROCHESTER MAN AND WOMAN CHARGED IN SEX TRAFFICKING CASE* (Dec. 14, 2012), https://www.justice.gov/archive/usao/nyw/2012/TwoCharged.pdf

[26] *FBI investigating teen human trafficking at Charlotte hotel*, WBTV3 (Sept. 17, 2015), https://www.wbtv.com/story/30058536/fbi-investigating-teen-human-trafficking-at-charlotte-hotel/.

[27] *Id.*

[28] Brittany Miller, *Man charged in prostitution ring headed to Dauphin County court*, Penn Live Patriot News(October 9, 2013), https://www.pennlive.com/midstate/2013/10/post_625.html

17

h.  In 2013, a local news station investigated a Florida Red Roof Inn because of the high volume of search warrants that continued to pop up for the hotel, including multiple warrants that reported a high volume of prostitution activity at the hotel.[29]

i.  In 2013, A Lubbock grand jury indicted four suspects arrested during a prostitution sting. Police discovered two underage victims during their sting operation at the Red Roof Inn.[30]

j.  The Knox County Sheriff's Office arrested a Knoxville man for human trafficking at a Red Roof Inn in 2013.[31]

k.  In 2014, a Cincinnati man plead guilty in U.S District Court to locking up women in his Avondale home, then driving them to Red Roof Inn in Louisville where he forced them into prostitution.[32]

l.  In 2014, a Rhode Island man pled guilty to attempted sex trafficking after he was accused of trying to procure customers to have sex with a 23-year-old woman in the Red Roof Inn on Wolf Road on Aug. 22, 2012.[33]

m.  In 2014 a man was arrested by the FBI in Orlando for holding a 15-year-old girl in a Phoenix RRI and selling her for sex. He was later sentenced to 8 years in prison.[34]

n.  A Mississippi man was arrested in 2014 on human trafficking charges for trafficking a 16-year-old out of a Red Roof Inn in Madison County. He later pled guilty to human trafficking and was sentenced to 25 years in prison.[35]

o.  In 2015, Police arrested 15 men in a sex-with-minors sting at a Red Roof Inn In Woodbury, Wisconsin.[36] The investigation started in 2014 when a man was arrested

---

[29] https://www.abcactionnews.com/news/motel-frequently-involved-in-criminal-activity-sees-more-than-200-calls-for-service-this-year

[30] *4 indicted on prostitution charges after Red Roof Inn sting*, KCBD News 11 (August 28, 2013), https://www.kcbd.com/story/23272377/4-charged-with-prostitution-offenses-after-red-roof-inn-sting/

[31] https://www.endslaverytn.org/news/knoxville-man-faces-human-trafficking-charges-newsarticle

[32] *https://www.fox19.com/story/27390036/avondale-man-pleads-guilty-to-sex-trafficking-in-louisville/*.

[33] https://www.timesunion.com/local/article/Sex-traffic-case-ends-in-plea-5440052.php

[34] Jamee Lind, *Phoenix man gets 8 years for selling teen for sex*, The Republic (Mar. 30, 2015), https://www.azcentral.com/story/news/local/phoenix/2015/03/30/phoenix-man-sex-trafficking-sentence-abrk/70691190/.

[35] Mary Grace Eppes, *Man sentenced for human trafficking in Madison Co.*, WLBT3 (Jan. 15, 2015), https://www.wlbt.com/story/27862158/man-sentenced-for-human-trafficking-in-madison-co/.

[36] Mathias Baden, *UPDATE: Police arrest 15 men in sex-with-minors sting at Red Roof Inn*, Republican Eagle (Sept. 23, 2015), https://www.republicaneagle.com/news/public_safety/update-police-arrest-15-men-in-sex-with-minors-sting-at-red-roof-inn/article_e48299f7-e13d-5c86-8e9f-f7faf22a8998.html.

at the RRI after responding to a Craigslist ad for sex with a 32-year-old and fondling of her deaf daughter.[37]

p. In 2016, 2 were charged with human trafficking involving a minor following their arrest at a Red Roof Inn in Louisville, Kentucky.[38]

q. In 2016, 2 were charged in a human trafficking scheme after police arrested them at a Red Roof Inn in Jessup, Maryland.[39]

r. In 2016, 2 were arrested in New Jersey and accused of running an interstate human trafficking ring out of a Red Roof Inn in Lawrence.[40]

s. In 2016, a man was sentenced to ten years for trafficking a 15-year-old girl at two motels, including a Red Roof Inn in Enfield, Connecticut.[41]

t. In 2016, a man was sentenced for trafficking a minor at a Red Roof Inn in Rochester, New York for an eight-month period in 2012.[42]

u. In 2016, two were arrested on human trafficking charges for forcing a woman into prostitution at an Indiana Red Roof Inn.[43]

v. In 2016, a man was sentenced on human trafficking charges after forcing a woman into prostitution at hotels, including a Red Roof Inn in Massachusetts.[44]

w. In 2016, arrests were made after investigation of a human trafficking operation operating out of hotels, including a Red Roof Inn in Illinois.[45]

x. In 2016, three were arrested on prostitution charges at a Red Roof Inn in Kentucky.[46]

---

[37] *Id.*

[38] https://www.wave3.com/story/31910401/2-charged-with-human-trafficking-involving-juvenile

[39] https://www.wbaltv.com/article/2-men-charged-in-howard-county-human-trafficking-scheme/7148473#

[40] https://www.trentonian.com/2016/09/01/new-york-man-accused-in-lawrence-sex-rings-boasts-about-600k-manhattan-home/

[41] https://www.courant.com/2016/11/14/hartford-man-sentenced-to-prison-for-sex-trafficking-of-15-year-old-girl/

[42] https://www.democratandchronicle.com/story/news/2016/01/14/rochester-man-sentenced-sex-trafficking/78770804/

[43] https://www.jconline.com/story/news/crime/2016/12/29/court-docs-alleged-pimps-paid-victim-heroin/95952012/

[44] https://www.newburyportnews.com/news/man-gets-5-to-8-years-in-prison-for-human-trafficking/article_79f32b03-3e96-5360-af02-76c53e249dec.html

[45] https://www.shawlocal.com/2016/01/18/joliet-hotel-among-meeting-places-in-rappers-sex-trafficking-ring/alh59bo/

[46] https://www.wdrb.com/news/crime-reports/louisville-police-arrest-three-during-undercover-prostitution-investigation/article_12b5448c-2857-5b6b-ba04-0aba80d5b5da.html

y.  In 2017, a man was charged with sex trafficking victims at a Red Roof Inn in Missouri.[47]

z.  In 2017, there were six arrests following a prostitution bust at a Red Rood Inn in Ohio.[48]

aa. In 2017, a man pled guilty to sex trafficking a 14-year-old girl at a Red Roof Inn in Kentucky.[49]

bb. In 2017, twenty-three people were arrested in a human trafficking investigation for trafficking eight girls, between the ages of 14 and 17, at Stockton, California hotels, including the Red Roof Inn.[50]

cc. In 2017, two were arrested for sex trafficking children, including at a Red Roof Inn in Ohio.[51]

dd. In 2018, two men were indicted on charges of child sex trafficking after a 15-year-old girl was found at a Red Roof Inn in Delaware.[52]

ee. In 2018, two were charged for running a sex trafficking operation out of an Illinois Red Roof Inn.[53]

ff. In 2018, a Virginia court upheld a defendant's conviction for sex-trafficking offenses related out of trafficking that occurred at a Virginia Red Roof Inn.[54]

59.  Ultimately, several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of RRI branded properties.

---

[47] https://www.stltoday.com/news/local/crime-and-courts/man-charged-with-sex-trafficking-at-red-roof-inn-in-st-louis/article_4c70ac45-ac34-5d28-bd3c-92efde095381.html
[48] https://www.news5cleveland.com/news/local-news/oh-summit/prostitution-bust-summit-co-investigators-fbi-arrest-six-at-springfield-township-red-roof-inn
[49]
[50] https://www.kcra.com/article/23-arrested-in-san-joaquin-county-human-trafficking/9588063
[51] https://www.cbs58.com/news/two-pastors-arrested-for-sex-trafficking-children
[52] https://www.acenewstoday.com/two-delaware-men-indicted-on-charges-of-child-sex-trafficking/
[53] https://www.wcia.com/news/local-news/two-people-face-charges-for-involvement-in-trafficking-ring/
[54] https://caselaw.findlaw.com/court/va-court-of-appeals/1944156.html

60. Upon information and belief, each Defendant monitored criminal activity occurring at RRI branded hotels and thus was aware of these incidents and many similar incidents at RRI properties around the country.

61. Upon information and belief, upper-level executives of the RRI Brand Defendants monitored news stories and law-enforcement reports regarding criminal activity at RRI branded hotels. Upon information and belief, the public relations department for the RRI Brand Defendants would circulate communications discussing criminal activity, including human trafficking and prostitution, at RRI branded properties.

62. No later than 2013, the RRI Brand Defendants began carefully monitoring online reviews and other customer feedback for RRI branded properties. Indeed, top leadership of the RRI Brand Defendants was "obsessed" with review of customer feedback, including online reviews.[55]

63. Leadership of the RRI Brand Defendants would receive compiled reviews from Reputology, an online-review aggregator, that compiled reviews for Red Roof Inns all over the country, including the subject locations.[56] RRI Brand Defendants responded to directly or required other Defendants to respond to reviews posted on review websites.

64. Based on information and belief, the Defendants managed and monitored on-line reviews of RRI hotel locations including the following sample:

    a. 2007 Tripadvisor review from New Jersey states "This place is a horrible hotel. First, I check in, drop off my luggage, and go get something to eat. I come back to find my room wide open, so I go to the front desk to report it, where i get the "Well, maybe you didnt close the door" and "I'm the only one here, so". The next night, a local prostitute moved in next door and started peddling her wares, so there was

---

[55]   https://www.usatoday.com/story/travel/hotels/2013/04/05/red-roof-hotel-outlets/2056817/
[56]   https://www.e-marketingassociates.com/blog/use-the-new-hootsuite-reputology-app-to-monitor-online-reviews

traffic all night, and even worse, she was a screamer. So I go to the front desk to report this, where I find the attendant asleep. Don't waste your money here."[57]

b. 2008 Expedia review out of California states "Prostitutes were in the local area and were using this hotel for their "business meetings"." [58]

c. 2008 Tripadvisor review in Pennsylvania states "This place is not only dirty but it is unsafe. The women of this town must use this hotel as hunting ground. The drug dealers are happy to see anyone check in because the think it is an instant sale. Cops swarm the parking lot continuously. Men walk the halls all hours of the day and night looking for drugs. Hookers walk the halls looking for their next guy. One hooker by the name of "Kimmy" approached my husband and wanted him to pay for sex with her when he refused she with with the next available guy. About 2 in the morning she is knocking on our door asking for my husband and wanted him to go party with him. I kicked "Kimmy" out and called the desk. They did nothing. Are the getting a pay off from the drug dealers and hookers?"[59]

d. 2008 Expedia review from Ohio states "…To top it off, I am fairly convinced I saw several prostitutes staying there offering thier services to the ODOT workers who were also guests….."[60]

e. 2008 Tripadvisor review from Washington states "Hookers passed out in the hall, bathrooms that flooded, topped off by the SWAT team bursting in down the hall at 2 am. This hotel was so dangerous that we complained about the drunk We didn't even have our luggage out of the rental car before two guys got in a screaming fight and ran right past us. It got better a few hours later when a hooker passed out in the hall in front of the room next door and our sleep was interrupted when the SeatTac SWAT team arrived after a dispute between a lady of the evening and a hotel guest that involved a weapon. . . . This is a DANGEROUS place to stay and there is a reason it is cheaper then the other hotels on the same street."[61]

f. 2010 Tripadvisor review from Virginia states "For the price you pay, this motel is on of the worst i have seen in this area…What you do get is hallways smelling like marijoana and othe illegall drugs. prostitutes renting rooms, drug dealers hanging around the motel, etc. I can't believe that fairfax county police are not aware of

[57] https://www.tripadvisor.com/Hotel_Review-g46649-d223813-Reviews-Red_Roof_Inn_Mt_Laurel-Mount_Laurel_New_Jersey.html
[58] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[59] https://www.tripadvisor.com/Hotel_Review-g30029-d96250-Reviews-Red_Roof_Inn_Allentown_Airport-Allentown_Pennsylvania.html
[60] https://www.expedia.com/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-Northeast-Blue-Ash.h17551.Hotel-Reviews
[61] https://www.tripadvisor.com/Hotel_Review-g58732-d217798-Reviews-Red_Roof_Inn_Seattle_Airport_SEATAC-SeaTac_Washington.html

these activities. Stay away from this motel if you don't like to expose yourself and your family to such activities mentioned above." [62]

g. 2010 Tripadvisor review from South Carolina states "The website lies to you. Nothing but pimps and hookers at this hotel. Had a drunk person knock on our door at 2am then the phone rings someone asking for a woman. No toilet paper. Room was dirty. Never again will I use this hotel chain again."[63]

h. 2010 Expedia review from California states "We stayed only a few hours. We think this place was being used for a weekend drug and prostitution house, way to many people in and out. Lots of noise and yelling."[64]

i. 2011 Yelp review out of Maryland states " This place was close to Washington and we stayed there 5 years ago. How the times have changed, The place reeked of pot smoke and there were hookers in and out of the rooms all night. It must have become some sort of welfare home because families were living there. My second and last night I was woken up by the pimp next door screaming at his girl for not making enough money, he needed to pay for the room and feed her F*^&ing kid who cried in the background. No place to eat near hotel except a Dominos type pizza place and a Chinese restaurant that the Maryland board of health has yet to discover.. On a bright note, no one in our group was killed, maybe because of the constant police presence in the parking lot. DO NOT STAY HERE."[65]

j. 2011 Tripadvisor review from Kentucky states "We stayed here a few days ago and the young man working the desk was very unprofessional. The whole look of the property was dismal. I am sure it's safe to say that drug dealers and hookers make this their home base. We will never stay at this place again!"[66]

k. 2012 TripAdvisor review out of Wisconsin states "I have stayed at this hotel twice a year for nearly 10 years and have never been as disappointed in the hotel as I was this time. It wasn't the room....the room was great....redone....comfy bed....clean. However, the PROBLEM was the other guests. There was a party going on above us with people yelling & cussing all night long. We complained to the front desk and nothing was done. Several suspect prostitutes were coming and going at all hours. The parking lot was LITTERED with strange things such as wigs, beer cans, and condoms."[67]

---

[62] https://www.tripadvisor.com/Hotel_Review-g58202-d243757-Reviews-Motel_6_Washington_DC_SW_Springfield-Springfield_Fairfax_County_Virginia.html
[63] https://www.tripadvisor.com/Hotel_Review-g54258-d227066-Reviews-Red_Roof_Inn_Greenville-Greenville_South_Carolina.html
[64] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[65] https://www.yelp.com/biz/red-roof-inn-washington-dc-laurel-laurel
[66] https://www.tripadvisor.com/Hotel_Review-g39604-d224889-Reviews-Red_Roof_Inn_Louisville_Expo_Airport-Louisville_Kentucky.html
[67] https://www.tripadvisor.com/Hotel_Review-g60149-d123051-Reviews-Red_Roof_Inn_Milwaukee_Airport-Oak_Creek_Wisconsin.html

l.   2012 Tripadvisor review from Texas states "I stayed here for a week and it was a miserable experience. The room was ok but the thugs that frequent were always present on the property made for an uneasy time. There were drug deals, prostitutes, and gang type activity on the property. There were a few thugs that tried to intimidate me and I never felt safe the whole time I was staying there. Trust me... Look elsewhere."[68]

m.   2012 Tripadvisor review from Michigan states "ABSOLUTELY NEVER STAY HERE - drug dealing and prostitution rife at hotel."[69]

n.   2013 Tripadvisor review from California states "…Because of our road trip we didn't arrive until 10 pm that night when we arrived there were about 5 prostitutes outside with pimps. We were so frightened we drove around for 30 minutes trying to cancel our stay and because it was after 6 pm they wouldn't allow us to cancel. I'm positive the owner has some sort of deal with the drug dealers and pimps there is no way he doesn't know this is going on. They don't even try to hide it!..."[70]

o.   2013 Tripadvisor review from Mississippi states "…If you are looking to have a beer with any of the vaqueros standing on each corner of the motel at all hours of day or night, this is the place for you. If you wish easy access to a prostitute down the hall, this is the place for you. If you desire a tattoo from the guy next door who just got out of prison, this is the place for you…"[71]

p.   2013 Tripadvisor review from North Carolina states "Stayed here this past weekend and had to change rooms 3 times. The inappropiate activites at this hotel were horendous. Prostitutes, dogs everywhere, drug deals and a fight in the parking lot. Would never stay again."[72]

q.   2013 Yelp review from Virginia states "Honestly i would have given a 1 star but i have to give an extra star for the honesty of the woman there who adamantly admitted that there are lots of prostitutes that stay there.hey at least she was honest about it."[73]

r.   2013 Tripadvisor review from Florida states "….The corporate office, regional, and general managers WILL be receiving very detailed letters INCLUDING

[68] https://www.tripadvisor.com/Hotel_Review-g56003-d223173-Reviews-Red_Roof_Inn_Houston_Westchase-Houston_Texas.html

[69] https://www.tripadvisor.com/Hotel_Review-g42207-d235115-Reviews-Red_Roof_Inn_Flint_Bishop_Airport-Flint_Michigan.html

[70] https://www.tripadvisor.co/Hotel_Review-g33130-d231069-Reviews-Red_Roof_Inn_Stockton-Stockton_California.html

[71] https://www.tripadvisor.com/Hotel_Review-g43833-d225211-Reviews-Red_Roof_Inn_Jackson_Downtown_Fairgrounds-Jackson_Mississippi.html

[72] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html

[73] https://www.yelp.com/biz/red-roof-plus-washington-dc-alexandria-alexandria-2

information pertaining to the police department being called because of drug activity AND CONCUBINES/PROSTITUTES as well as the PEDDLERS asking hotel guests for money. THE WORST HOTEL IVE EVER STAYED AT."[74]

s.  2014 Tripadvisor review from Oklahoma states "…. Random meth heads, hookers, and undesirables roaming the property ALL night. Literally all night."[75]

t.  2014 Expedia review from Ohio states "…also prostitution going on every dang night along with drug deals in parking lot…"[76]

u.  2014 Expedia review from North Carolina states "Great place if you need a hooker or drugs. Never again. Pimps running there girls in and out all night. Two domestic disputes during the night. Got no sleep."[77]

v.  2014 Expedia review from California states "It was like out of a movie with all the hookers, and pimps out front. . . ."[78]

w.  2014 Expedia review from North Carolina states "No security at this Hotel, and there was a lot of traffic coming in and out of the parking lot all hours of the evening. A lot of undesirables hanging around, pimps and drug dealers. There are some whom set up a porch by their doors indicating that they are living there for extended stays."[79]

x.  2015 Tripadvisor review from Missouri "The scariest of all was definitely when I came across a scene of what appeared a prostitute kneeling and crying in the parking lot while a pimp was yelling at her. Management should look into that."[80]

y.  2016 Expedia review from Ohio states "Absolutely terrible. Drugs everywhere, prostitutes. Just not a good hotel."[81]

z.  2016 Tripadvisor review from Virginia states "…Prostitutes work out of this hotel. I would never stay here again."[82]

---

[74] https://www.tripadvisor.com/Hotel_Review-g34550-d226822-Reviews-or40-Red_Roof_Inn_Pensacola_I_10_at_Davis_Highway-Pensacola_Florida.html
[75] https://www.tripadvisor.com/Hotel_Review-g51560-d224966-i80249747-Red_Roof_Inn_Oklahoma_City_Airport-Oklahoma_City_Oklahoma.html
[76] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-Ohio-State-Fairgrounds.h450037.Hotel-Reviews
[77] https://www.expedia.com/Wilmington-Hotels-Red-Roof-Inn-Wilmington.h14416.Hotel-Reviews
[78] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[79] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html
[80] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html
[81] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews
[82] https://www.tripadvisor.com/Hotel_Review-g58277-d225059-Reviews-Red_Roof_Inn_Virginia_Beach-Virginia_Beach_Virginia.html#REVIEWS

aa. 2016 review from Ohio states "Hookers everywhere…not a safe place to bring the wife & kids that's for sure."[83]

bb. 2015 Yelp review from Ohio states "They give pimps discounts and the strippers from Christie's cabaret stay here almost exclusively. So there is a lot of drug activity and whores."[84]

cc. 2016 review from Tripadvisor from Texas states "I have to imagine it would be a very reasonably priced casual encounter as well... Let's just say that the pimps were easy to ID and the women standing in the doorways with almost nothing on reminded me of a visit to Amsterdam in my youth. The room was nice enough, but this is quite possibly the most sketchy neighborhood I've ever had a hotel in outside of Europe's Redlight districts."[85]

dd. 2017 Expedia review from Ohio states "…we checked in early at like 3 pm, but when the sun went down omg !! all the prostitutes started showing up! I was so embarrassed having to explain to my 6 year old daughter why these women were dressed that way!!!"[86]

ee. 2017 Google review from Ohio states "There are prostitutes in this hotel. A pimp was outside bleeding. Police were called. He was shot."[87]

ff. 2017 Tripadvisor review from Texas states "Two words - NEVER AGAIN! During check in we were skipped for a 2 hour prostitution sale, her pimp propositioned my husband and son in the parking lot for drugs and sale of prostitution. We did not feel safe nor comfortable the entire 2 days we were there."

gg. 2018 Expedia review from Ohio states "…There were also at least 2 hookers walking around soliciting. We also watched/heard 2 men argue outside, to the point I was afraid someone was going to end up hurt…"[88]

---

[83] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews
[84] https://www.yelp.com/biz/red-roof-inn-canton-north-canton-2
[85] https://www.tripadvisor.com.au/Hotel_Review-g56003-d1577352-Reviews-or40-Red_Roof_Inn_Houston_North_FM1960_I_45-Houston_Texas.html
[86] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-East-Reynoldsburg.h20658.Hotel-Reviews
[87]https://www.google.com/travel/hotels/Red%20Roof%20Inn%205900%20Pfeiffer%20Rd,%20Blue%20Ash,%20OH%2045242%20google/entity/CgsIpv7r-N3htczhARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4810792,4810794,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906019,4926165,4926489,4930751,4930752,4931360,4936396,4937897,4938634,4938636,47061553&hl=en-US&gl=us&ssta=1&q=Red+Roof+Inn+5900+Pfeiffer+Rd,+Blue+Ash,+OH+45242+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGA4SBwjnDxACGA8gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg4NDA1M2VjNDY2NjhiZWQ6MHhlMTk4ZD9cwZGRmMWFmZjI2&rp=EKb-6_jd4bXM4QEQpv7r-N3htczhATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwiqqPCyxvH8AhUgQzABHT-DCyEQ4gl6BAhrEAU
[88] https://www.expedia.com.tw/en/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-East-Beechmont.h25044.Hotel-Reviews

     hh. 2019 Yelp review from Ohio states "…The hotel/motel really, it became obvious this was a live in hotel for some which happens, but it became apparent there was prostitution happening here and it was very very unnerving I was more concerned of the persons moving about the hotel at no discretion of the place . The hotel had more shady people milling about no security. There were unsavory things going's on "hired persons" if you will…"[89]

     ii. 2019 Expedia review from Ohio states "Cons: Omg! Prostitution happening here. Prostitutes hanging out of their doors even solicited a family member. Shady people. Banging on doors middle of the night. This is what you get for the price…"[90]

65.    This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (K.R.A.) was trafficked at the subject Red Roof Inn, the RRI Brand Defendants knew or should have known that:

    a. There was widespread and ongoing sex trafficking occurring at RRI branded properties.

    b. Sex trafficking was a brand-wide problem for RRI originating from management level decisions at their corporate offices in Ohio.

    c. RRI franchisees and hotel staff were not taking reasonable steps to identify and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties.

    d. RRI's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective.

    e. RRI and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

66.    Despite the continually mounting evidence that sex trafficking at RRI branded properties was ongoing and growing, the RRI Brand Defendants did not change course. The RRI Brand Defendants chose to continue earning revenue and profits from renting out space in their hotels as a venue for trafficking.

---

[89] https://www.yelp.com/biz/red-roof-inn-cleveland-airport-middleburg-heights-middleburg-heights
[90] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews

**b.** **Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the subject RRI**

67.     The RRI Brand Defendants and Franchisee Defendant were also specifically aware that sex trafficking was prevalent at the Subject Red Roof Inn.

68.     The RRI Brand Defendants and Franchisee Defendant knew that the Red Roof Inn was in a high-crime area with a known history of reports of sex trafficking.

69.     Online reviews of Defendants' hotel, which upon information and belief were monitored by The RRI Brand Defendants and Franchisee Defendant establish the nature of the role the Red Roof Inn serves as a venue for sex trafficking. For example:

   a. 2014 TripAdvisor review from the subject RRI states "… It had prostitutes and drug activities…"[91]

   b. 2014 TripAdvisor review from the subject RRI states "… There were lots of people hanging out all night i guess hookers, the low price must have attracted them also. I have stayed at many Red Roofs, all had been updated, this one needs it bad. For $49, I suppose I got what I paid for."[92]

   c. 2014 TripAdvisor review from the subject RRI states "…hen, until after 3 AM on a weeknight, I could see drug sales and prostitution going on right outside my room..."[93]

   d. 2014 TripAdvisor review from the subject RRI states "…Worst place ever the people were rude and the place is a crack den prostitutes everywhere …"[94]

   e. 2015 Expedia review from the subject RRI states, "Stay away! Hookers all around. Roach and fly infested room. Burn holes in the blankets. No one on duty when we arrived. On a one out of ten scale it's a one."[95]

---

[91] https://www.tripadvisor.com/Hotel_Review-g60805-d120161-Reviews-Red_Roof_Inn_Jacksonville_Orange_Park-Jacksonville_Florida.html
[92] https://www.tripadvisor.com/Hotel_Review-g60805-d120161-Reviews-Red_Roof_Inn_Jacksonville_Orange_Park-Jacksonville_Florida.html
[93] https://www.tripadvisor.com/Hotel_Review-g60805-d120161-Reviews-Red_Roof_Inn_Jacksonville_Orange_Park-Jacksonville_Florida.html
[94] https://www.tripadvisor.com/Hotel_Review-g60805-d120161-Reviews-Red_Roof_Inn_Jacksonville_Orange_Park-Jacksonville_Florida.html
[95] https://www.expedia.com/Jacksonville-Hotels-Red-Roof-Inn-Jacksonville-Orange-Park.h25969.Hotel-Reviews

f. 2015 TripAdvisor review from the subject RRI states "Drug users, dealers, prostitutes & God knows what else…"[96]

70. Traffickers, including Jane Doe (K.R.A.)'s trafficker, repeatedly chose to use RRI properties for their sex trafficking activity. As such, the RRI Brand Defendants also knew or should have known about the pervasive sex trafficking at the Subject Red Roof Inn based on obvious indicators of this activity.

71. Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the subject RRIs prior to Jane Doe (K.R.A.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

72. All knowledge from the staff at the Subject Red Roof Inn is imputed to the RRI Brand Defendants. The RRI Brand Defendants knew about this widespread and ongoing trafficking at the Subject Red Roof Inn, including the trafficking of Jane Doe (K.R.A.), through the direct observations of hotel staff, including management-level staff.

---

[96] https://www.tripadvisor.com/Hotel_Review-g60805-d120161-Reviews-Red_Roof_Inn_Jacksonville_Orange_Park-Jacksonville_Florida.html

73.     Upon information and belief, the RRI Defendants knew or should have known about the widespread trafficking at the subject Red Roof Inn location referenced herein, based on:

    a.  The obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the RRI Defendants;

    b.  The Defendants' regular monitoring of online reviews;

    c.  The Defendants' collection and monitoring of customer surveys and complaints;

    d.  The Defendants' regular inspections of the hotel property;

    e.  Information provided to Defendants by law enforcement; and

    f.  Other sources of information available to Defendants.

74.     Upon information and belief, under the RRI Brand Defendants' protocols, which on their face required hotel staff and management to report suspected criminal activity to the RRI Brand Defendants, hotel staff and management were required to report numerous instances of suspected sex trafficking to the RRI Brand Defendants prior to Jane Doe (K.R.A.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the Subject Red Roof Inn.

**c.  Defendants knew Jane Doe (K.R.A.) was being trafficked at the Subject Red Roof Inn Location because of the apparent and obvious "red flags" of sex trafficking**

75.     During the period that Jane Doe (K.R.A.) was trafficked at the Subject Red Roof Inn, there were obvious signs that her traffickers were engaged in sex trafficking:

    a.  The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

    b.  Other girls were trafficked at the same hotel at the same time as Jane Doe (K.R.A.);

    c.  Excessive towels and sheets were frequently requested;

    d.  Housekeeping staff was bribed with liquor to let the client and her trafficker know if someone left drugs or extra condoms in another room or if other traffickers or police were near by.

e.  The trafficker was often present with Jane Doe (K.R.A.) at check in and would linger around the hotel or in the parking lot while she was with a john;

f.  There was heavy foot traffic in and out of Jane Doe (K.R.A.)'s room involving men who were not hotel guests;

g.  Jane Doe (K.R.A.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

h.  Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

76.  Based upon information and belief, multiple employees at the Subject Red Roof Inn, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

77.  As such, the RRI Brand Defendants and Franchisee Defendant knew or were willfully blind to the fact that Jane Doe (K.R.A.) was being trafficked at the Subject Red Roof Inn.

78.  Given these obvious signs, the RRI Brand Defendants and Franchisee Defendant knew or should have known about the trafficking of Jane Doe (K.R.A.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

**IV.  Defendants actively facilitated sex trafficking at these Subject Red Roof Inn, including the trafficking of Jane Doe (K.R.A.)**

79.  During interactions with the front desk staff at the Red Roof Inn, Jane Doe (K.R.A.) and her trafficker exhibited obvious and apparent signs of trafficking, including:

a.  The hotel did not ask for Jane Doe (K.R.A.)'s identification card.

b.  Jane Doe (K.R.A.)'s trafficker would pay for rooms with cash or prepaid cards.

c.  Jane Doe (K.R.A.) and her traffickers would arrive and book a room with little or no luggage with them.

d.  Jane Doe (K.R.A.) had visible signs of abuse.

80.  The RRI Brand Defendants are responsible for the acts and omission of all employees of the Red Roof Inn because these acts and omissions were committed in the scope and

course of employment, because it ratified these acts and omissions, and because Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the risks, known to them, of human trafficking occurring in the Red Roof Inn.

81.     Franchisee Defendant including through the staff at the Red Roof Inn, had an opportunity to and did observe obvious signs that there was widespread sex trafficking in the Red Roof Inn and, despite this, allowed this activity to continue unabated.

82.     Franchisee Defendant including through the staff at the Red Roof Inn, had an opportunity to and did observe obvious signs that Jane Doe (K.R.A.) was being sex trafficked such that Franchisee Defendant had actual knowledge or was reckless in not knowing that Jane Doe (K.R.A.) was being sex trafficked at the Red Roof Inn.  Nonetheless, Franchisee Defendant took no steps in response to these signs and, instead, continued to provide assistance to her traffickers.

83.     Franchisee Defendant facilitated Jane Doe (K.R.A.)'s trafficking at the Red Roof Inn through numerous acts and omission, including:

    a.  Franchisee Defendant failed to report known or suspected trafficking activity appropriately according to reasonable practices, industry standards, and/or applicable policies;

    b.  Despite seeing obvious signs of distress, Franchisee Defendant failed to take any steps to inquire about the welfare of Jane Doe (K.R.A.)

    c.  Franchisee Defendant continued to rent rooms to traffickers, including Jane Doe (K.R.A.)'s traffickers, despite known or obvious signs of trafficking;

    d.  Franchisee Defendant failed to take reasonable steps to hire, train and supervise staff to properly detect and respond to sex trafficking at the Red Roof Inn;

    e.  Franchisee Defendant enabled traffickers to access ancillary services that supported trafficking activities, such as providing Wi-Fi access they used to advertise commercial sex services, furnishing an unusually large number of sheets and towels to facilitate the commercial sex acts, and providing disproportionate housekeeping

services necessary to clean up the paraphernalia left after the transactions related to commercial sex; and

f. Franchisee Defendant accommodated specific requests of the traffickers.

84. All knowledge from the staff at the subject RRI is imputed to Franchisee Defendant, which employed the hotel staff. Thus, Franchisee Defendant knew about the widespread and ongoing trafficking at the subject RRI, including the trafficking of Jane Doe (K.R.A.), through the direct observations of hotel staff, including management-level staff.

85. By ignoring or remaining willfully blind to obvious signs of trafficking, Franchisee Defendant assisted traffickers by providing them a venue, with the cover of a legitimate business, where they could conduct their trafficking activities without having to expend significant efforts to avoid detection or interference.

86. The RRI Brand Defendants retained control over the details and methods of aspects of the operation of the Red Roof Inn that are directly relevant to the proliferation of sex trafficking at that property. As a result of this retained control and its direct involvement, the RRI Brand Defendants participated in a venture with sex traffickers who were using the Red Roof Inn as a venue for their trafficking. Moreover, as a result of this retained control, RRI Brand Defendants had both the opportunity and the duty to prevent Jane Doe (K.R.A.)'s trafficking.

87. RRI Brand Defendants retained control over the training of the staff of the Red Roof Inn regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for sexual exploitation and human trafficking. If the RRI Brand Defendants had exercised reasonable diligence in providing training, it would have prevented the Red Roof Inn from being used to facilitate obvious and apparent sex trafficking, including the trafficking of Jane Doe (K.R.A.) By failing to take reasonable steps to provide appropriate training, despite the

overwhelming evidence it had of an ongoing problem with use of its branded properties for sex trafficking, the RRI Brand Defendants negligently facilitated sex trafficking.

88.     Beyond training, RRI Brand Defendants also retained control over the response of its hotels to human trafficking, including development of policies and procedure regarding detection of and response to human trafficking. By retaining control in this area, RRI Brand Defendants assumed a legal duty to the patrons and guests of its hotels. By failing to exercise reasonable diligence in discharge of this duty, RRI Brand Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (K.R.A.) in its hotels.

89.     At the heart of Defendants' venture with traffickers (including Jane Doe (K.R.A.)'s traffickers) is the reservation of hotel rooms. Upon information and belief, RRI Brand Defendants retained control over the details of reservations at the Red Roof Inn, including controlling the online reservation system that Franchisee Defendant were required to use, providing software systems Franchisee Defendant had to use to check guests in and charge for rooms, controlling the prices of rooms, setting all details of the customer loyalty program that Franchisee Defendant were required to implement, and setting detailed policies for things such as payment methods and requirements to show identification. Because reservations and payments were processed through its systems, RRI Brand Defendants had access to guest and payment information. RRI Brand Defendants thus directly participated, through its acts and omissions, in reserving rooms to traffickers, including Jane Doe (K.R.A.)'s traffickers. If RRI Brand Defendants had used reasonable diligence in setting, implementing, and enforcing appropriate policies, it would have detected Jane Doe (K.R.A.)'s trafficking and/or prevented Jane Doe (K.R.A.)'s trafficker from using a room to sexually exploit Jane Doe (K.R.A.) By failing to exercise reasonable diligence in

discharge of this duty, RRI Brand Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (K.R.A.), in their hotels.

90.     Specifically, the RRI Brand Defendants should have known about and prevented Jane Doe (K.R.A.)'s trafficking because the RRI Brand Defendants failed to adopt and enforce appropriate identification policies and payment-method policies to prohibit use of its hotel properties for trafficking. RRI Brand Defendants retained the control to adopt and enforce policies on this subject for its branded properties, including the Subject Red Roof Inn, but failed to adopt and enforce appropriate policies, which facilitated trafficking at the Subject Red Roof Inn and allowed Jane Doe (K.R.A.)'s trafficker to access rooms for the purpose of trafficking Jane Doe (K.R.A.).

91.     The RRI Brand Defendants also retained control over issues related to reporting security and criminal activity, including human trafficking activity. On information and belief, RRI Brand Defendants adopted a policy that required staff at the Subject Red Roof Inn to report indicators or potential criminal activity on premises to RRI Brand Defendants. Based on RRI Brand Defendants retained control over this area, it knew or—with reasonable diligence in implementing and enforcing this policy—should have known that Jane Doe (K.R.A.) was being trafficked. By failing to exercise reasonable diligence in discharge of this duty, RRI Brand Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe, at the Subject Red Roof Inn.

92.     On information and belief, RRI Brand Defendants also retained control over property-specific data and customer data from the Subject Red Roof Inn—which they obtained by controlling the means and methods by which Franchisee Defendant recorded, stored, and reported that data—such that they had actual or constructive knowledge—about the ongoing trafficking that

was occurring at the Subject Red Roof Inn during the time Jane Doe (K.R.A.) was trafficked there. However, on information and belief, RRI Brand Defendants was willfully blind to this data and continued to facilitate trafficking at the Subject Red Roof Inn by providing a venue—and associated services—where traffickers could profit from sexual exploitation with minimal risk of disruption.

93. RRI Brand Defendants also retained control over the security of the Subject Red Roof Inn through various means including, upon information and belief, placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting the Subject Red Roof Inn. It also collected data regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Because RRI Brand Defendants retained this control, it had a duty to the patrons and visitors to the Red Roof Inn. If RRI Brand Defendants had exercised reasonable care in the discharge of this duty, it would have detected and known about Jane Doe (K.R.A.)'s trafficking- and avoided facilitating it. By failing to exercise reasonable diligence in discharge of this duty, RRI Brand Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (K.R.A.), in its hotel.

94. RRI Brand Defendants also retained control over the safety and security of the experience at its branded properties by setting up systems for customers to report issues to RRI Brand Defendants rather than Franchisee Defendant. Despite doing this, RRI Brand Defendants failed to act reasonably in response to complaints about criminal activity and sex trafficking at its properties, including the Red Roof Inn. If RRI Brand Defendants had acted reasonably and prudently in monitoring and responding to customer complaints, this would have reduced the

rampant sex trafficking in its branded properties and would not have facilitated Jane Doe (K.R.A.)'s sex trafficking.

95.     RRI Brand Defendants required Franchisee Defendant to offer internet service to guests at the Red Roof Inn and retained control over the details of that internet service and policies regarding its use. Upon information and belief, RRI Brand Defendants required Franchisee Defendant to use a particular platform, set policies, and retained access to data regarding guests' use of wi-fi. RRI Brand Defendants were aware that sex traffickers used the internet to facilitate trafficking by advertising victims' commercial sex services. Because RRI Brand Defendants retained control over internet service, it could have but did not enact policies to prevent Jane Doe (K.R.A.)'s trafficker from advertising commercial sex activity online and could have, with reasonable diligence, used tools to determine when their hotel and wi-fi were being used to facilitate unlawful sexual exploitation.

96.     Based on public reporting, investigations, criminal incidents, hotel reviews and comments, and direct reporting from Franchisee Defendant, as set out throughout this Complaint, RRI Brand Defendants had actual knowledge of pervasive sex trafficking throughout its owned hotel properties generally and specifically at the Subject Red Roof Inn. RRI Brand Defendants, through its acts and omissions, knowingly received financial benefit from activity at its branded hotels, including the Red Roof Inn, that the RRI Brand Defendants knew or should have known was unlawful sex trafficking.

97.     If the RRI Brand Defendants had acted reasonably, in compliance with industry standard, in compliance with its own promises, and/or in compliance with its own policies and procedures, Jane Doe (K.R.A.)'s trafficking would have been prevented.

98. In addition to the RRI Brand Defendants direct involvement in the venture through the means outlined above, RRI Brand Defendants also participated in the venture through the acts and omissions of Franchisee Defendant, which are RRI Brand Defendants' actual agents for the purpose of operating the Red Roof Inn.

99. Upon information and belief, the RRI Brand Defendants exercised systemic and pervasive control over Franchisee Defendant's day-to-day operation of the Red Roof Inn, including the methods and details of Franchisee Defendant's work, through ways including:

   a. Controlling and requiring franchisees to use a reservation and marketing system;

   b. Controlling and requiring franchisees to use a credit process system;

   c. Dictating policies regarding forms of payment;

   d. Setting prices;

   e. Setting wages;

   f. Making or influencing employment decisions;

   g. Requiring standardized training for hotel employees;

   h. Requiring franchisees to collect guest data RRI Brand Defendants' systems, to compile reports, and to make that data available to RRI Brand Defendants; and

   i. Requiring Franchisee Defendant to comply with standards, policies, and rules adopted by RRI Brand Defendants on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, or other hotel brand related policies published and communicated via property management systems, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Red Roof Inn.

100. The RRI Brand Defendants did not merely identify quality or outcome standards. Instead, it specifically directed the means and methods that Franchisee Defendant and the staff at the Red Roof Inn should use for day-to-day operations and dictated many of the core tools that

38

Franchisee Defendant were required to use to conduct those operations, including the means and methods of operations that directly caused Jane Doe (K.R.A.)'s damages.

101. Upon information and belief, RRI Brand Defendants had the right to and actually did enforce their control over Franchisee Defendant through various methods including:

    a. Inspections of the Red Roof Inn;

    b. Monitoring or auditing Franchisee Defendant for compliance with policies and expectations;

    c. Directing Franchisee Defendant to take specific steps to come into compliance with detailed and exacting standards;

    d. Mandating training and education; and

    e. Maintaining the right to terminate the franchise agreement.

102. The RRI Brand Defendants are vicariously liable for the acts and omissions of its agents, Franchisee Defendant and any sub-agents or employees Franchisee Defendant with respect to operation of the Red Roof Inn.

103. In addition, both the RRI Brand Defendants and Franchisee Defendant participated in the venture through the acts and omissions of the staff at the Red Roof Inn because the RRI Brand Defendants and Franchisee Defendant jointly employ or ratify the employment of staff at the Red Roof Inn.

104. Upon information and belief, the RRI Brand Defendants exercises control over the terms and conditions of the terms and conditions of employment by:

    a. Posting jobs for its branded properties;

    b. Providing benefits to staff of its branded properties;

    c. Setting pay, pay parameters, or pay ranges for staff of its branded properties;

d.  Setting job qualifications;

e.  Setting job descriptions;

f.  Dictating staffing levels required at its branded properties;

g.  Making or influencing hiring decisions;

h.  Providing onboarding and ongoing training; and

i.  Maintaining employment records, including training records.

105.    RRI Brand Defendants and Franchisee Defendant act as joint employers because, at the Red Roof Inn, there is a high degree of interrelation of operations and profit sharing.

106.    In ways described more fully above, RRI Brand Defendants and Franchisee Defendant knowingly received a financial benefit from participating in a venture with sex traffickers, including Jane Doe (K.R.A.)'s sex traffickers, as follows:

a.  Sex traffickers, including Jane Doe (K.R.A.)'s sex traffickers, frequently used the Red Roof Inn for their trafficking because they knew that staff members would look the other way. This occurred because RRI Brand Defendants and Franchisee Defendant (1) failed to adopt and enact policies to effectively detect sex trafficking and stop use of their facilities to facilitate that trafficking; (2) failed to use reasonable care when hiring, retaining, supervising, and training staff at the Red Roof Inn; and (3) affirmatively adopted policies and procedures that allowed sex trafficking to flourish.

b.  Both the RRI Brand Defendants and Franchisee Defendant participated in this venture by acting jointly to rent rooms to traffickers Franchisee Defendant provided "boots on the ground" for reservations, and RRI Brand Defendants retained control over reservation systems and applicable policies and guidelines as further described in this Complaint. They participated in the venture by continuing to rent rooms to Jane Doe (K.R.A.)'s traffickers long after they knew or should have known that Jane Doe (K.R.A.) was being subjected to unlawful trafficking.

c.  Defendants did not only provide these traffickers with a physical space but also with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low-risk of disruption. This was done pursuant to an implicit agreement with Defendants, which is evidenced by, among other things:

i.  Jane Doe (K.R.A.)'s traffickers were familiar to the staff at the Red Roof Inn;

40

ii. Jane Doe (K.R.A.)'s traffickers took no steps to conceal their activities from the staff at the Red Roof Inn but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by that staff;

iii. Despite policies and/or industry standards to the contrary, Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments, not requiring the identification card of the individual actually paying for the room;

iv. Both RRI Brand Defendants and Franchisee Defendant participated in this venture by providing additional services to traffickers (including Jane Doe (K.R.A.)'s traffickers), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms; and

v. Defendants' venture with traffickers resulted in revenue from room rentals and other incidental purchases by traffickers, including Jane Doe (K.R.A.)'s trafficker, which accrued to the benefit of both RRI Brand Defendants and Franchisee Defendant. Each room rented at the Red Roof Inn increased revenue for both RRI Brand Defendants and Franchisee Defendant.

107. The RRI Brand Defendants also knowingly received a financial benefit by engaging in a venture with Franchisee Defendant operating the Red Roof Inn despite the fact that RRI Brand Defendants knew or should have known that Franchisee Defendant was engaged in violation a of 18 U.S.C §1591(a):

a. RRI Brand Defendants and Franchisee Defendant entered into a venture to operate the Red Roof Inn with the shared objective of maximizing revenue and profits;

b. RRI Brand Defendants knowingly received a financial benefit from this venture in the form of franchising fees, royalty fees, and other payments from Franchisee Defendant;

c. Franchisee Defendant violated 18 U.S.C §1591(a)(1) because, through their management of the Red Roof Inn and the acts and omissions of the staff of this hotel, Franchisee Defendant harbored trafficking victims and participated in a venture with sex traffickers; and

d. RRI Brand Defendants knew, or with the exercise of reasonable diligence, would have known that Franchisee Defendant were engaged in violations of 18 U.S.C §1591(a). RRI Brand Defendants should have known about Franchisee Defendant's activity at the Red Roof Inn because RRI Brand Defendants retained control over relevant aspects of the operations of the Red Roof Inn and thus owed a corresponding duty. Despite this, RRI Brand Defendants continued to

knowingly benefit from its relationship with Franchisee Defendant, including the proceeds Franchisee Defendant obtained from unlawful sex trafficking. RRI Brand Defendants continued providing Franchisee Defendant with operational support, use of its trademarks, and other resources to operate the Red Roof Inn in a way that RRI Brand Defendants knew or should have known was engaging in violations of 18 U.S.C §1591(a).

108.    Under the TVPRA, Defendants are jointly and severally liable for all damages a jury awards to Jane Doe (K.R.A.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

109.    Jane Doe (K.R.A.)  incorporates all previous allegations.

110.    At all relevant times, Jane Doe (K.R.A.) was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

111.    Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as described above, Defendants knowingly benefitted, by receiving financial and other compensation, from their participation in a venture they knew or should have known was engaged in a violation of the TVPRA, 18 U.S.C. § 1581, et seq.

112.    Despite knowledge of (S.S)'s sex trafficking by the Defendants, Jane Doe (K.R.A.)'s trafficker was able to continue renting rooms for the sexual exploitation of Jane Doe (K.R.A.)  at the Subject Red Roof Inn.

113.    Each Defendant participated in a venture together and with, among others, Jane Doe (K.R.A.)'s trafficker. Defendants had an ongoing business relationship and association in fact with Jane Doe (K.R.A.)'s trafficker. Despite the fact that Defendants knew or should have known that Jane Doe (K.R.A.) was being sex trafficked in violation of the TVPRA, Jane Doe (K.R.A.)'s trafficker was able to rent rooms for the sexual exploitation of Jane Doe (K.R.A.) at the Subject

Red Roof Inn. Jane Doe (K.R.A.)'s sex traffickers used the Subject Red Roof Inn because they knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant profited while Jane Doe (K.R.A.)'s trafficker was able to rent a secure venue to earn profits by trafficking Jane Doe (K.R.A.) Each Defendant participated in the venture by continually renting rooms to Jane Doe (K.R.A.)'s trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of Jane Doe (K.R.A.)'s trafficking.

114.    Through the acts and omissions described throughout this Complaint, the RRI Brand Defendants received a financial benefit from participating in a venture with Franchisee Defendant and the staff of the Subject Red Roof Inn even though RRI Brand Defendants knew or should have known this venture was engaged in a violation of the TVPRA, 18 U.S.C. §§ 1595(a) and 1591(a).

115.    Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including Jane Doe (K.R.A.) at the Subject Red Roof Inn, enabled and contributed to the sex trafficking of Jane Doe (K.R.A.)

116.    Each Defendant received substantial financial benefits as a result of these acts and/or omissions. RRI Brand Defendants received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the Red Roof Inn. Franchisee Defendant received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the Subject Red Roof Inn.

117.     The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

118.     The venture or ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to Jane Doe (K.R.A.)

119.     Jane Doe (K.R.A.) further alleges that, as a result of the relationship between the RRI Brand Defendants and Franchisee Defendant, the RRI Brand Defendants are vicariously liable for the acts of Franchisee Defendant, including at the Red Roof Inn.  Factors that support this allegation are that RRI Brand Defendants shared profits, standardized employee training, standardized and strict rules of operations, and RRI Brand Defendants controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, RRI Brand Defendants had the right to terminate any franchisee, including Franchisee Defendant, that failed to comply with the requirements promulgated by RRI Brand Defendants. Thus, RRI Brand Defendants retained control, or the right to control, the mode and manner of work contracted for.

120.     Jane Doe (K.R.A.) further alleges that RRI Brand Defendants vicariously liable for the acts and omissions of the staff at the Red Roof Inn because RRI Brand Defendants, together with Franchisee Defendant, acted as the joint employer of these employees because RRI Brand Defendants and Franchisee Defendant jointly controlled the terms and conditions of their employment.

121.     RRI Brand Defendants and Franchisee Defendant acts and omissions, individually and collectively, caused Jane Doe (K.R.A.) to sustain legal damages.

122.     RRI Brand Defendants and Franchisee Defendant are joint and severally liable for all past and future damages sustained by Jane Doe (K.R.A.)

123.     Jane Doe (K.R.A.) is entitled to be compensated for personal injuries and economic damages, including:

    a.   Actual damages;

    b.   Direct damages;

    c.   Incidental and consequential damages;

    e.   Mental anguish and emotional distress damages (until trial and in the future);

    f.   Lost earning capacity in the future;

    g.   Loss of self-esteem and self-worth;

    h.   Necessary medical expenses;

    i.   Physical pain and suffering;

    j.   Physical impairment;

    k.   Emotional impairment;

    l.   Unjust enrichment; and

    m.   Penalties.

124.     Jane Doe (K.R.A.) is entitled to exemplary damages.

125.     Jane Doe (K.R.A.) is entitled to treble damages.

126.     Jane Doe (K.R.A.) is entitled to recover attorneys' fees and costs of court.

127.     Jane Doe (K.R.A.) is entitled to pre- and post-judgment interest at the maximum legal rates.

128.     A constructive trust should be imposed on Defendants, and the Court should sequester any benefits or money wrongfully received by Defendants for the benefit of Jane Doe (K.R.A.)

## DISCOVERY RULE

129.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (K.R.A.) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert, across the subject locations.

130.    Jane Doe (K.R.A.) was subject to continuous trafficking at the subject hotel through at least December 2014, which is not more than 10 years before Jane Doe (K.R.A.) filed this lawsuit.

131.    This continuous trafficking resulted from Defendants' continuous facilitating of trafficking at the subject hotels and Defendants' ongoing venture with one another and with criminal traffickers.

## JURY TRIAL

132.    Jane Doe (K.R.A.) demands a jury trial on all issues.

## RELIEF SOUGHT

Wherefore, Jane Doe (K.R.A.) respectfully requests judgment against Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC and Sunstar Orangepark, Inc., jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.


Dated: December 30, 2024                    Respectfully submitted,

                                            */s/* Matthew J.P. Coffman
                                            Matthew J.P. Coffman (0085586)

Tristan T. Akers (0102298)
Coffman Legal, LLC
1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220
(614) 949-1181
(614) 386-9964 Facsimile
mcoffman@mcoffmanlegal.com
takers@mcoffmanlegal.com


**ANNIE MCADAMS PC**
Annie McAdams | SBN 24051014
2900 North Loop West
Suite 1130
Houston Texas 77092
(713) 785-6262
(866) 713-6141 Facsimile
*annie@mcadamspc.com*

and

**SICO HOELSCHER HARRIS, LLP**
David E. Harris | SBN 24049273
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 653-3300
(361) 653-3333 Facsimile
*dharris@shhlaw.com*

**ATTORNEYS FOR PLAINTIFF**